## Board of Trustees Hiseville Graded Common School District, et al. v. Palmore, et al.

(Decided June 7, 1927.)

### Appeal from Barren Circuit Court.

1.  Trusts.—Where schoolhouse was being erected by donations and declaration of trust declared that property was held for school

district and that trustees did not agree to execute deed to school district until payment of all 'incumbrances or mortgages, which then existed or should thereafter be created while the property was held by them, trustees held property in trust for persons contributing towards schoolhouse and would hold property in trust for school district on completion of schoolhouse and removal of incumbrances.

2.    Trusts.—Where title to schoolhouse was held in trust for persons contributing towards its erection and was to be held in trust for school district after it should be completed and incumbrances should be removed, school district and its trustees were proper parties defendant in suit to enforce a lien for money advanced to complete the building.

3.    Trusts.—Where title to schoolhouse was in trust for persons contributing to erection and was to be held in trust for school district after it should be completed and incumbrances should be removed, all donors were necessary parties to a suit to enforce a lien thereon for money advanced to complete the building.

4.    Trusts.—Where schoolhouse was being erected by donations, and trustees held title in trust for the persons contributing towards its erection and were to hold in trust for school district after building should be completed and incumbrances should be removed, and the trustees advanced the money to complete the building, they were entitled to a lien therefor.

5.    Trusts.—Where title to schoolhouse was held in trust for persons contributing towards its erection and was to be held in trust for school district when building should be completed and incumbrances should be removed, on sale to enforce lien for money advanced to complete it, the residue after paying the lien must be distributed to the donors pro rata.

6.    Trusts.—Where donations towards schoolhouse were payable during period of five years and school house was held in trust for donors and was to be held in trust for school district when building should be completed and incumbrances should be removed, trustees' suit to enforce their lien for money advanced to complete it, brought before the expiration of the five years and without notice to the donors, was premature.

7.    Trusts.—Where trustees holding schoolhouse in trust for those contributing towards its erection, and contingently in trust for school district, had a lien for money advanced to complete it, they were entitled to control building until lien was paid, under trust declaration stating that trustees did not agree to convey to school district until incumbrances should be paid.

8.    Trusts.—Where trustees held schoolhouse in trust for persons contributing towards its erection and were to hold in trust for school districts after completion, but not to execute deed to school district until payment of incumbrances existing or thereafter created while property was held by them, trustees held bound to convey

schoolhouse to school district when the only incumbrance should be paid.

W. L. PORTER for appellants.

V. H. BAIRD and C. H. HATCHETT for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

This record discloses a most unfortunate condition. Hiseville is a village situated in the eastern part of Barren county, and is the center of a rich agricultural community. The citizenship of the village and community had secured the establishment of a graded school district many years ago. The community has been ambitious for schools, and the citizens have been willing to bear the burdens of taxation necessary to maintain a splendid school. In 1923 the old school building had served its purpose and its time and was condemned by the proper authorities. The citizens in the graded school district were desirous of a more commodious school building than had existed in the past so that a high school might be established in connection with their graded school. The question of obtaining a new building was not undertaken by the school district in its corporate capacity. The board of trustees appear to have passed the matter to the citizens and individuals rather than the members of the school district corporation. A public meeting was called, a chairman selected, and discussion had on ways and means for securing the erection of a new school building. This meeting resulted in the appointment of committees to solicit subscriptions towards the erection of the building. It was agreed at this public meeting that a school house should be built at a cost of approximately $20,000.00, and that amount was the objective in the minds of the committees soliciting funds. In their laudable enthusiasm the citizens readily subscribed $20,000.00. At that time no site had been selected for the location of the building. Another public meeting was called, and a committee was appointed to investigate sites and report to a public meeting. This committee reported to a public meeting suggesting four sites, but favoring one in particular. The public meeting then decided that it would leave to the board of trustees of the graded school district the question of selecting a site from the four suggested. The board of trustees at a public meeting called to consider

the matter made the selection of a site. After the selection of the site, at another public meeting a building committee was selected from among the citizens of the school district, and the members of the board of trustees of the school district were made members of the building committee. The board of trustees used the proceeds of the sale of the old school building to purchase lots to be used in connection with the new building, but the particular site selected was not on the lots purchased by the board of trustees but was surrounded by said lots. The title to the particular lot on which the building was to be erected was in an infant, and it was necessary to have a court proceeding before title could be obtained to the lot.

This lot was sold at public auction and was purchased by Sam Steen, who was chairman of the board of trustees of the Hiseville graded common school district. He executed bond for the purchase price, and thereafter the board of trustees met and on June 13, 1924, the board directed the Barren circuit court to have the conveyance to this lot made to the appellees herein: Sam Steen, Dr. E. L. Palmore, and Dr. G. C. Depp. This appears to have been the only order entered by the board of trustees in its corporate capacity that related to the erection of the new building, or which had any connection with it.

At this time the citizens had subscribed $20,000.00, which sum they had agreed to contribute towards the erection of a new school building. These contributions, it appears, were to be made to the building committee. Up to this time the school district had taken no step in its corporate capacity towards the construction of a new school building. After the title to this lot had been placed in the appellees, they executed a writing which is the only paper in the record shedding much light on the questions in controversy. This writing is in the nature of a "to whom it may concern." The writing discloses that the appellees had been nominated and appointed to act as trustees of certain property known as the Hiseville graded school property. The property is then described as the same that was purchased at the master commissioner's sale at Glasgow. The statement is then made that the property does not belong to appellees, and that it is owned by the Hiseville school district. The paper is clear, definite, and certain in the statement that the property is held for the school district and for school pur-

poses, and the property was to be used and held by appellees at the direction of said school district by their duly authorized agents. The concluding clause in said writing is as follows:

> "But we do not agree to execute deed to said property to said school district until all incumbrances are paid and all mortgages are paid which now exist on said property or which may hereafter be created during the time said property is held by us."

After the execution of the above-mentioned paper, a committee proceeded to the erection of the building. No contract was awarded, but the work was done for force account as it were, or, rather, the committee bought the material and employed the laborers. The building committee had a treasurer, B. W. Smith, and he paid for the material and labor as far as he had any money. $15,000.00 had been paid on the subscriptions made by the citizens, and when the sum was exhausted at least $10,000.00 additional was needed to complete the building. The appellees borrowed $10,000.00 to complete the work, and they did this to prevent the filing of mechanics' liens against the property.

We are not advised as to what brought on the trouble, but the venture which began with such fair promise was never carried out in its fullness. $5,000.00 of the subscriptions were not paid, although it seems to be admitted that these subscriptions are collectible. The $10,-000.00 note was not paid. On April 17, 1926, the appellees instituted this action in equity in the Barren circuit court against the Hiseville graded common school district and the trustees of the district. In the first paragraph of their petition they allege that they held the title to the school building and lot on which it was located, and that the title was vested in them to secure the payment of the balance due for the erection of the building, and that they have a lien on the property to secure the unpaid balance. In the second paragraph of the petition they allege that the unpaid subscriptions amount to $5,000.00, and that the board of trustees should be required to collect this sum and use the proceeds towards discharging their claim. In the third paragraph they alleged that the school district took possession of the building, but has refused to pay for repairs or insurance. In the fourth

paragraph they allege that the school district has failed to comply with its contract and agreement, and that it has therefore forfeited all rights to the school building. They, further allege in this paragraph that they are the owners of this building and are entitled to recover possession of it, together with rentals for the time it has been used by, the school district. They ask in this paragraph that a. mandatory injunction be issued compelling the district to deliver the property to them. A demurrer was filed to the seperate paragraphs of the petition and was sustained as to the three first paragraphs, but the court appears to have overlooked the fact that these paragraphs had been held demurrable, and that no amendment had been filed.

The court on final submission found, as a matter of fact, that the taxable property in the Hiseville graded common school district is $280,000.00, and that the number of poll tax payers in said district is 100. It was then adjudged by the court that the appellees had a lien on the school building and lot to secure the amount of money which they had advanced in the construction of said building amounting to $11,000.00. It was adjudged that the lien be enforced and that said property be sold. The judgment was executed and the property was sold and purchased by the appellees. Their bid was $3,400.00. Exceptions were filed to the report of sale and overruled. The whole matter has been brought to this court for review.

The records of the building committee were made a. part of the record and the proceedings of that committee show that it had full charge of the erection of the school building.

A proper solution of the questions submitted is one of great difficulty. This record discloses that the citizens of the school district undertook to erect the building and donate it to the district. The school district had no official connection with what has been done, but the school district has taken possession of the property and is using it as if the undertaking had been carried out. The school district has certain rights in the property contingent upon the payment of the balance which is due, but until that shall happen the school district is without any legal title to the property. Either the citizens of the district must carry out the undertaking and donate the property to the district free of all debts, or the district must find

some way to pay the balance and thereby become the owner of the property.

The appellees were trustees for the citizens interested in the erection of this building, with the understanding that after the building should be completed they were trustees for the school district in holding the property until it should be conveyed to the district by them. The school district did not owe the debt for which this suit was instituted, and, while the district and the trustees were proper parties to the suit as they had a contingent interest in the property, all the parties in interest were not parties to the suit. Those who had donated to the construction of the building have an interest in it, and if the affair must be wound up through court proceedings it will be necessary for all interested parties to be brought before the court. The trustees at the sale, that is, the appellees, purchased the property, but after the purchase they were still trustees and held the property for the other citizens and ultimately for the school district if the terms upon which they held the property should be fulfilled. If the sale had been valid, the school district or the others interested, would have had an election to have the sale set aside within a reasonable time. Robson's Guardian v. Robson, 213 Ky. 625, 281 S. W. 789. But the sale was not valid as the proceedings were irregular and all parties were not before the court, and the exceptions to the report should have been sustained.

The balance of the unpaid subscriptions should be collected and applied towards the extinguishment of the debt of appellees. The appellees, as trustees, having advanced the money to complete the work, have a lien on the property to secure the payment of their debt. After the payment of their debt, if there is anything remaining, it would have to be distributed pro rata among those who had donated towards the erection of the building.

No time was fixed when this undertaking should be completed or carried out. The trustees, that is, the appellees, in the writing which they executed, retained title to the property until all debts and incumbrances should be satisfied. As no time was fixed when these debts and incumbrances should be satisfied, the trustees could not fix the time at their own election. It is disclosed in the evidence that the subscriptions were payable through a period of five years, which would seem to indicate that it

was not in the minds of any of the parties that the building would be fully paid for until the ex-, piration of that period, as there was no intention of paying for the building except by the collection of the subscriptions. The suit therefore was premature. At least, the trustees should have given notice to the school district and to the citizens who had donated to the project that the matter would have to be wound up within a reasonable time before they could institute a suit to collect the amount of their debt by the enforcement of their lien against the property. As matters now stand, there is a school district without any building and without any interest in a building except a contingent interest dependent upon the gratuity of the citizens of the district. The individuals donating to the project through the trustees, that is, the appellees, are the owners of a school building, but they have no school district. The two should be put together in some way.

The trustees, that is, the appellees, have full control of the school buildings, and they are entitled to retain the control thereof until their indebtedness is satisfied. This indebtedness may be satisfied by the collection of the subscriptions which have already been made and by additional donations, or it may be satisfied by the school district. The school district may rent the property from the appellees from year to year, and the rentals so paid may be applied towards the payment of the interest on the indebtedness and the reduction of the principal. A reasonable rental for the property, the rentals to be used as aforesaid, should be as much as 6 per cent. on the total cost of the property, or $1,500.00 annually. If the appellees, acting as trustees, should issue interest-bearing bonds running from one to ten years, and if the school district should increase its rate of taxation to the limit and should use enough of the taxes to pay a rental of $1,500.00 annually, the entire indebtedness, with interest, could be retired within ten years, and probably less, as the proceeds of the unpaid subscriptions could be used to pay interest on the bonds as well as the principal. Other donations might be used for the same purpose. The appellees acting as trustees could mortgage the property designating another trustee as mortgagee to secure the payment of the bonds. The matter could be worked out along this line, but we do not mean to say that the trustees, acting for the citizens and for themselves, may not

enter into any equitable arrangements with the board of trustees for the satisfaction of their debt. When their debt is satisfied either by donation or the payment of rentals as aforesaid, the property must be conveyed to the school district.

We cannot believe that this prosperous, intelligent, and forward looking community will allow calamity to overtake it through the failure of the school district and the citizens to agree upon some plan which will prove satisfactory to all parties.

If the trustees of the school district refuse to rent the property on some fair basis to be agreed upon, or if they fail or refuse to take such steps as will protect the rights of the district under the writing executed by appellees, and if the citizens of the district will go no further towards carrying out the undertaking so that the property will be conveyed to the district free from debt, then the appellees, acting as trustees, may institute their suit for the settlement of the entire matter, and the court may direct a sale of the property to satisfy their debt.

Judgment is reversed and cause remanded for proceedings consistent with this opinion.